1  JESSICA F. HAHN, SBN 199269
   JHahn@ohaganmeyer.com
2  **O'HAGAN MEYER LLP**
   4695 MacArthur Court, Suite 900
3  Newport Beach, California 92660
   Telephone: 949-519-2080
4
   Attorneys for Defendants
5  RELISH LABS LLC dba HOME CHEF
   and CECILIA PACKARD
6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDI SIEBERT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>RELISH LABS LLC, an Ohio limited liability company doing business as HOME CHEF; CECILIA PACKARD, an individual; and DOES 1 through 25, Inclusive,<br><br>Defendants. | CASE NO.:  5:24-cv-002508<br><br>**DEFENDANT RELISH LABS LLC DBA HOME CHEF'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §1332 §1441(a) and (b) [DIVERSITY OF CITIZENSHIP]**<br><br>[Filed concurrently with Declaration of Jessica F. Hahn; Declaration of David W. Fell; Declaration of Cecilia Packard; Certification and Notice of Interested Parties; Civil Cover Sheet]<br><br>Removal Filed:<br>Action Filed:       October 16. 2024 |

**NOTICE OF REMOVAL OF CIVIL ACTION TO PLAINTIFF BRANDI SIEBERT, HER ATTORNEYS OF RECORD, AND THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant RELISH LABS LLC dba HOME CHEF ("Defendant" and/or "Relish Labs") hereby removes this action from the Superior Court of California,

---

DEFENDANT RELISH LABS LLC DBA HOME CHEF'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER
28 U.S.C. § 1441(a) and (b) [FEDERAL QUESTION AND DIVERSITY OF CITIZENSHIP]

County of Riverside, to the United States District Court for the Central District of California, Eastern Division based on federal question and diversity jurisdiction.

  This Court has original subject matter jurisdiction over Plaintiff Brandi Siebert's ("Plaintiff") lawsuit under 28 U.S.C. § 1331 because this action arises under federal law. In addition, this Court has diversity jurisdiction over Plaintiff's lawsuit under 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between Plaintiff and Defendant, i.e., Plaintiff is a citizen of a different state than Defendant, and the amount in controversy pertaining to Plaintiff's claims, exclusive of interest and costs, is more likely than not to exceed $75,000.00. This action may be removed by Defendant pursuant to 28 U.S.C. § 1441.

DATED: November 22, 2024  O'HAGAN MEYER LLP

By: /s/ Jessica F. Hahn
  Jessica F. Hahn
  Attorneys for Defendant
  RELISH LABS LLC dba HOME CHEF

## I. INTRODUCTION

This is an employment lawsuit brought by Plaintiff Brandi Siebert. ("Plaintiff") in connection with her former employment with Defendant Relish Labs LLC dba Home Chef ("Defendant" or "Relish Labs").

On October 16, 2024, Plaintiff filed her Complaint, titled *Brandi Siebert v. Relish Labs LLC, et al.*, in the Superior Court of California, County of Riverside, Case No. CVRI2405853. (*See* Declaration of Jessica F. Hahn ("Hahn Decl."), ¶2.) True and correct copies of the Summons and the Complaint are attached hereto as **Exhibit A** and **Exhibit B**, respectively. (Id.)

Plaintiff asserts the following claims against Relish Labs: (1) Failure to Reasonably Accommodate Disability; Failure to Engage in Good Faith Interactive Process; Failure to Prevent Discrimination/Retaliation; (5) Retaliation in Violation of the Fair Employment and Housing Act; (6) Interference with Rights Under California Family Rights Act; (7) Wrongful Termination in Violation of Public Policy; and (8) Intentional Infliction of Emotional Distress. (**Exhibit B**, at pp. 9-23.) Plaintiff seeks attorneys' fees, punitive damages, and general and special damages, including economic damages, emotional distress damages, and costs of suit. (**Exhibit B**, at pp. 23.)

Service of Plaintiff's Summons and Complaint was effectuated on Relish Labs via personal service on October 23, 2024. (Hahn Decl., ¶3.) A true and correct copy of Plaintiff's Proof of Service of Summons is attached hereto as **Exhibit C**. (Hahn Decl., ¶3.)

On November 20, 2024, Relish Labs answered Plaintiff's Complaint. (Hahn Decl., ¶4.) A true and correct copy of the Answer to Plaintiff's Complaint is attached hereto as **Exhibit D**. Relish Labs will lodge a court-conformed copy upon receipt from the state court. (Id.)

In addition to **Exhibits A through D**, the state court action contains the following additional process, pleadings, and orders: Certificate of Counsel (**Exhibit**

E); Civil Case Cover Sheet **(Exhibit F)**; Notice of Case Management Conference **(Exhibit G)**; and Notice of Department Assignment **(Exhibit H)**. (Hahn Decl., ¶5.)

To Relish Labs' knowledge, the pleadings attached as **Exhibits A through H** constitute all process, pleadings, and orders filed in the state court action. See 28 U.S.C. § 1446(a).

This Notice of Removal is timely filed within 30 days after service of the Complaint on Defendant. See 28 U.S.C. § 1446(b)(2)(c).

## II.     JURISDICTIONAL BASIS FOR REMOVAL

### A.     Diversity of Citizenship

Relish Labs is, and at the time of filing of this action was, a limited liability company organized under the laws of Ohio, with its principal place of business in Illinois. (See Declaration of David Fell ["Fell Decl."], ¶5, **Exhibit 1**.) Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any state by which it has been incorporated and of the state where it has its principal place of business." Thus, Relish Labs is a citizen of Illinois and of Ohio.

Under 28 U.S.C. section 1332(c)(1), "a corporation shall be deemed to be a citizen of any state by which it has been incorporated and of the state where it has its principal place of business." A corporation's principal place of business is the "nerve center… from which its officers direct, control, and coordinate all activities without regard to locale, in the furtherance of the corporate objective." *Hertz Corp. v. Friend* 559 U.S. 77, 90 (2010). At all relevant times, Defendant's principal place of business and corporate headquarters have been located in Chicago, Illinois. (Fell Decl. ¶5.) Defendant's high-level corporate officers and executives, who are responsible for overseeing Defendant's activities, are located at its headquarters in Chicago, Illinois. (*Id.*) Accordingly, all of Defendant's primary, executive, administrative, financial, policymaking, and management functions are performed in the State of Illinois. (*Id.*) Thus, Defendant is a citizen of Illinois.

/ / /

Plaintiff is a citizen of California. The Complaint alleges Plaintiff is an individual and resident of California. (Hahn Decl., ¶2, **Exhibit B**, ¶3.) Throughout her employment with Relish Labs between approximately March 2021 through June 2024, Plaintiff was employed in California. (Fell Decl., ¶7.)

A natural person's state citizenship is determined by his or her state of domicile. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id*. at 857. A person is "domiciled" in a location when she has established a fixed habitation or abode in a particular place and intends to remain there permanently or indefinitely. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). It is presumed a natural person's residence is also his or her domicile, and a party resisting this presumption bears the burden of producing contrary evidence. *Ayala v. Cox Auto*, No. CV 16-06341-GHK (ASx), 2016 U.S. Dist. LEXIS 153617, *10 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *Lew v. Moss*, *supra*, 797 F.2d at 751).

In determining domiciliary intent, courts have analyzed a number of factors including: current residence, place of employment, driver's license, automobile registration, house/telephone number, bank accounts, tax payments, voting practices, receipt of mail, representation of public documents, location of family, and connections to community. *Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3rd Cir. 2011); *Noreiga v. Lever Bros. Co.*, 671 F. Supp. 991, 993-94 (S.D.N.Y. 1987); *Knapp v. State Farm Ins.*, 584 F. Supp. 905, 907 (E.D.La. 1984).

For purposes of removal based on diversity of citizenship, the citizenship of defendants sued under fictitious names is disregarded. Thus, the citizenship of alleged Doe defendants is disregarded for purposes of this removal. 28 U.S.C. § 1441(b)(1); *Soliman v. Phillip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002). To Defendant's knowledge, no other defendant(s) have been either named or served in

this action. Doe Defendants designated 1 to 25 are fictitious, are not parties to this action, have not been served, and, thus, are of no consequence for purposes of this removal. (Hahn Decl. ¶6.) See *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-691 (9th Cir. 1998).

Defendant is a citizen of Illinois and of Ohio. Plaintiff is a citizen of California. Thus, complete diversity exists as is required under 28 U.S.C. § 1332(a).

### B. <u>Amount in Controversy</u>

The amount in controversy requirement of 28 U.S.C. § 1332 is also satisfied. Pursuant to 28 U.S.C. § 1332(a), the amount in controversy in a case where federal jurisdiction is predicated upon diversity of citizenship jurisdiction must exceed $75,000, exclusive of interest and costs.

A defendant need only establish by a preponderance of the evidence that the plaintiff's claims exceed the jurisdictional minimum. *See Valdez v. Allstate Ins. Co., supra*, 372 F.3d at 1117. In determining whether the jurisdictional minimum is met, the Court should consider all recoverable damages, including compensatory damages, punitive damages, and attorneys' fees. *See Simmons v. PCR Tech*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002).

The amount in controversy may be satisfied based on the allegations in the complaint. *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (a defendant may use the allegations in the complaint to establish the amount in controversy); *Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998). "[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-415 (9th Cir. 2018). A defendant may also provide "summary-judgment-type evidence" to establish the requirements necessary for diversity of citizenship jurisdiction. *See Valdez*, 372 F.3d at 1117; *see also Singer*, 116 F.3d at 374 ("defense counsel submitted declarations to show that the amount in

controversy exceeded [the jurisdictional minimum]").

This is an action for wrongful termination in violation of public policy, failure to accommodate, interference in violation of the California Family Rights Act ("CFRA"), failure to engage in the interactive process, and intentional infliction of emotional distress action by which Plaintiff is seeking economic damages, general damages (including emotional distress), punitive damages, costs of suit, and attorneys' fees. (*See* Hahn Decl., ¶2, **Exhibit B**, p. 23.) If Plaintiff were to prevail at trial, she would be entitled to back pay, which is compensation in the amount she would have received but for the alleged adverse employment action, less sums obtained through mitigation through the date of trial. *Parker v. Twentieth Century-Fox Film Corp.*, 3 Cal.3d 176, 181 (Cal. 1970). Plaintiff would also be entitled to front pay, which provides compensation based on what Plaintiff would have earned from her employment after trial. *Foley v. Interactive Data Corp.*, 47 Cal.3d 564, 692 (Cal. 1988).

Plaintiff's employment with Relish Labs ended on or about June 14, 2024. (Fell Decl., ¶8.) At the time of Plaintiff's separation of employment, she was an hourly employee earning $18.25 per hour, or approximately $37,960.00 annually, not including overtime. (Fell Decl., ¶8.) While Defendant denies Plaintiff is entitled to recover any damages, as of this removal, it has been four months since Plaintiff's employment with Defendant ended. Assuming, arguendo that Plaintiff is awarded back pay from June 14, 2024 (her date of separation of employment with Defendant) through June 2025 (approximately one year from the date of removal), Plaintiff's back pay award could be at least $50,613.00 ($3,163.00 X 16 months).

In addition, Plaintiff seeks future economic damages. (Hahn Decl., ¶2, **Exhibit B**, ¶¶51, 59, 66, 74, 81, 89and 96, and Prayer for Relief, ¶¶1, 4.) Conservatively estimating a front pay award of one year would total an additional $37,960. Consequently, a reasonable estimate of Plaintiff's potential award of back and front pay totals approximately $88,573.00, which on its own exceeds the

$75,000 amount in controversy requirement.

Plaintiff is also seeking emotional distress damages. (*See* Hahn Decl., ¶2, **Exhibit B** at ¶¶52, 60, 67, 75, 82, 90, and 97, and Prayer for Relief, ¶2.) Although Plaintiff does not state a specific dollar amount of damages she seeks for emotional distress, the Court may properly include these damages when determining whether the amount in controversy requirement has been met. *See Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995). Emotional distress damages can be substantial. *See, e.g., Raphael Vasquez v. Los Angeles County Metropolitan Transportation Authority*, Case No. BC484335, Los Angeles Superior Court, Nov. 12, 2012 (jury verdict awarding $1,250,000 for emotional distress in single plaintiff wrongful termination and disability discrimination case); *Campbell v. National Passenger Railroad Corp.*, 2009 WL 692094 (N.D. Cal., Mar. 3, 2009) (awarding $120,000 in non-economic damages in single plaintiff wrongful termination/retaliation case); *Vasquez v. Arvato Digit. Servs., LLC*, 2011 U.S. Dist. LEXIS 69154 at **10-11 (C.D. Cal. June 27, 2011) (citing *Espinoza v. County of Orange*, Case No. 30200800110643, at *1 (Cal. Super. Ct. Oct. 8, 2009) where an Orange County jury awarded plaintiff $500,000 in emotional distress damages against his employer); *Iwekaogwu v. City of Los Angeles*, 75 Cal.App.4th 803, 820-821 (1999) (affirming judgment, including jury award of $450,000 in emotional distress damages for violations of the FEHA). Accordingly, although Defendant denies that Plaintiff suffered emotional distress, if she were to prevail and establish such injuries, her damages for emotional distress alone could well exceed the jurisdictional minimum.

Additionally, Plaintiff includes a separate cause of action for intentional infliction of emotional distress. (Hahn Decl., **Exhibit B**, ¶¶99-105.) As with the emotional distress claims attendant to the other causes of action, if Plaintiff established Defendant intentionally inflicted emotional distress upon her, her damages for this single cause of action would likely exceed the jurisdictional

minimum.

Plaintiff also seeks an unspecified amount in punitive damages. (Hahn Decl., ¶2, **Exhibit B** at ¶¶53, 61, 68, 76, 83, 91, 98, and 104, and Prayer for Relief, ¶3.) In addition to compensatory damages, Plaintiff's claims for punitive damages are part of the amount in controversy when determining diversity jurisdiction. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). California juries have returned verdicts with substantial punitive damage awards in employment actions. See *Aucina v. Amoco Oil Co.*, 871 F. Supp. 332, 334 (SD. Iowa 1994) ("Because the purpose of punitive damages is to capture the defendant's attention and deter others from similar conduct, it is apparent that the plaintiff's claim for punitive damages alone might exceed [the jurisdictional amount].") Punitive damages here would only further increase the amount in controversy above the $75,000 threshold.

Attorneys' fees, including future attorneys' fees, must be included in the amount in controversy. (*Dias v. Burberry Ltd.*, 2021 U.S. Dist. LEXIS 108200 at *25 (S.D. Cal. 2021) (citing *Fritsch v. Swift Transportation Co. of Ariz.*, LLC, 889 F.3d 785, 788, 793-94 (9th Cir. 2018)). The Ninth Circuit has affirmed numerous six-figure attorney fee awards in FEHA cases. *See, e.g.*, *Muniz v. UPS*, 738 F.3d 214, 225 (9th Cir. 2013) ($696,162.78 in attorneys' fees); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1473, 1480 (9th Cir. 1995) ($724,380 in attorneys' fees); *Fair Hous. v. Combs*, 285 F.3d 899, 902 (9th Cir. 2002) ($508,606.78 in attorneys' fees). All of Plaintiff's claims provide a prevailing plaintiff attorneys' fees and costs. The Ninth Circuit uses a benchmark rate of 25% of the potential damages to estimate the amount of attorneys' fees. See *Molnar v. 1-800 Flowers.com, Inc.*, No. CV 08-0542 CAS (JCx)) 2009 U.S.Dist.LEXIS 131768, at *15 (C.D. Cal. Feb 23, 2009) ("fair estimate of attorneys' fees in this action is 25% of compensatory damages"); *Tompkins v. Basic Research LLC*, 2008 U.S. Dist. LEXIS 81411, 2008 WL 1808316, *4 (E.D. Cal. Apr. 22, 2008) (when calculating attorneys' fees for remand purposes, a reasonable estimate is 25% of the common

DEFENDANT RELISH LABS LLC DBA HOME CHEF'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441(a) and (b)

fund). According to this benchmark rate, attorneys' fees would increase the amount in controversy here by at least $21,321.00 ($85,282.00 x 25%), exclusive of emotional distress damages and punitive damages.

Despite the fact that no specific amount of damages is demanded in Plaintiff's Complaint, and Defendant denies that Plaintiff has been damaged by Defendant, or at all, the preponderance of the evidence based on the form of the foregoing allegations establishes that the amount in controversy in this instant action exceeds the amount specified by 28 U.S.C. section 1332(a). See 28 U.S.C. § 1446(c)(2).

### C. Individual Defendant Cecilia Packard Has Been Fraudulently Joined

Individual Defendant Cecilia Packard ("Ms. Packard"), while identified as a resident of the State of California, is a "sham defendant" added only to defeat diversity jurisdiction. A non-diverse party named in the state court action may be disregarded if the court determines that party's joinder is a sham or fraudulent so that no possible cause of action has been stated against that party. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

> 'Fraudulent joinder' is a term of art. It does not reflect on the integrity of plaintiff or counsel. It is 'merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if there is *no real intention to get a joint judgment, and ... there is no colorable ground for so claiming*.'

*AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.* (4th Cir. 1990) 903 F.2d 1000, 1003 (emphasis added; internal quotes and brackets omitted); see also *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

The determination of whether a resident defendant has been fraudulently joined is based upon the plaintiff's pleadings at the time of removal. *De Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). In addition, "fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises*, 236 F.3d at 1067; *see also Badon v. R J R Nabisco*, Inc., 224 F.3d 382, 389-390 (5th Cir. 2000) (diversity removal may be based on evidence outside the pleadings to establish that the plaintiff has no possibility of recovery on the claim or claims asserted against the named resident defendant and that hence such defendant is fraudulently joined and his citizenship must be disregarded for jurisdictional purposes). The policy rationale for diversity jurisdiction was based on the assurance to non-resident litigants to be free from susceptibility to the potential for local bias. *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945).

As set forth in *GranCare, LLC v. Thrower*, 889 F.3d 543 (9th Cir. 2018), there are two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *See also Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009). Fraudulent joinder is established the second way if a defendant shows that an "individual joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co*, 139 F.3d 1313, 1318 (9th Cir. 1998).

There are no valid causes of action against Ms. Packard in this case. The removing party must prove, by a preponderance of evidence, actual facts necessary to support the petition for removal. *Gaus v. Mile, Inc.*, 980 F.2d 564, 566-567 (9th Cir. 1992). It does *not* have to be shown that the joinder was for the purpose of preventing removal. Rather, the question is simply whether there is any possibility that plaintiff will be able to establish liability against the party in question. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992); *Ritchey v. Upjohn Drug*

*Co.*, 139 F.3d 1313, 1318-1319 (9th Cir. 1998); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999).

In this matter, there is not the slightest possibility Plaintiff can establish any liability against Ms. Packard. On May 10, 2024, Plaintiff emailed a release to return to work without restriction. (Declaration of Cecilia Packard ["Packard Decl."], ¶6, **Exhibit A**.) Plaintiff then emailed on May 26, 2024. She stated that she had sent an email "letting u know that the surgeon said it was ok to return to work on May 23, 2024 *but with modification* due it still healing and been going to physical therapy." (Packard Decl., ¶7, **Exhibit B** [emphasis added].) Given that Plaintiff referenced returning to work with "modifications," on May 29, 2024, Ms. Packard asked for further clarification regarding Plaintiff's doctor's note and when Plaintiff's anticipated return to work would be, and whether the return was with or without accommodations, a request well within in Ms. Packard's rights as Human Resource Business Partner. (Packard Decl., ¶8, **Exhibit C**.) Plaintiff responded via email on June 1, 2024 but provided no information about her medical status or any accommodation she purportedly needed. (Packard Decl., ¶9, **Exhibit C**.)

Plaintiff's representations within paragraph 42 of her Complaint are blatantly false. Plaintiff did in fact receive a response to her June 1, 2024 email from Ms. Packard. Despite Plaintiff's meritless claim that "Packard refus[ed] to clarify whether Plaintiff still had a job at Defendant or could return to work to lure her into a false voluntary resignation," Ms. Packard's June 5, 2024 email clearly indicates otherwise. On June 5, 2024, Ms. Packard explicitly reiterated that Plaintiff was still a Home Chef employee, but that Plaintiff had not indicated if she was returning to work or would be requesting additional leave. Ms. Packard subsequently requested that Plaintiff submit documentation from her physician indicating her return to work as well as information regarding any work restrictions. (Packard Decl., ¶10, **Exhibit C**.) Plaintiff never responded and failed to submit any of the requested documentation. (Packard Decl., ¶11.) Accordingly, Defendant had no choice but to

terminate Plaintiff's employment and Ms. Packard sent the June 14, 2024, email processing a separation of employment due to job abandonment. (Packard Decl., ¶12, **Exhibit D**.)

Notwithstanding Plaintiff's blatantly false allegations, Plaintiff fails to plead any facts demonstrating Ms. Packard's conduct was so "outrageous as to exceed all bounds of that usually tolerated in a civilized community." *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 863 P.2d 795 (1993). "With respect to the requirement that a plaintiff show severe emotional distress, this court has set a high bar. Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Id*. Here, in accordance with her responsibilities as a human resources business partner, Ms. Packard engaged with Plaintiff in the required interactive process to accommodate Plaintiff, and accommodated Plaintiff. Plaintiff had exhausted her medical leave and the only way to extend a leave of absence is through proper documentation from the treating physician. Ms. Packard was not only legally authorized to request such documentation, but she did so to further Plaintiff's interest in extending her medical leave. Under no circumstance could Ms. Packard's actions constitute an infliction of severe emotional distress upon Plaintiff. Additionally, when Plaintiff voiced her alleged frustrations with Defendant in her June 1, 2024, email, Ms. Packard expressed utmost compassion towards Plaintiff and indicated she was sorry for the way Plaintiff felt. Ms. Packard assured Plaintiff that she (Ms. Packard) would raise Plaintiff's concerns to her supervisors in an attempt to rectify the way Plaintiff was feeling. (Packard Decl., ¶8, **Exhibit C**.) Lastly, Plaintiff claims, "Packard's unilateral actions deceptively denied Plaintiff the rights to which she was entitled, including her employment." Once again, Ms. Packard's emails to Plaintiff clearly refute this allegation. Ms. Packard's emails not only specifically note that Plaintiff was still an employee of Defendant, but also provide the necessary steps for Plaintiff to follow in order for

Ms. Packard to adequately process Plaintiff's medical leave request/accommodation status.  (Packard Decl., ¶¶8, 10, **Exhibit C**.)  Enumerating a list of available options to satisfy Plaintiff's requests can hardly be seen as deceptive.  There is zero factual support to indicate Ms. Packard intended to inflict injury or engaged in any conduct with the realization that injury would result to Plaintiff.

While Plaintiff makes baseless accusations that, "Packard's conduct went beyond the normal scope of what is expected in the course of employment… and not expressly tolerated in a civilized society," Plaintiff has not, and cannot, identify a single instance in which Ms. Packard's conduct could be interpreted as being beyond the bounds of decency or beyond the scope of what is expected in the course of employment.  "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society.  A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55 (1996).  It is Ms. Packard's duty to ensure Defendant and its employees comply with California employment and labor laws.  Requesting information to ascertain Plaintiff's return to work status cannot be characterized as conduct so outrageous as to inflict severe emotional distress upon Plaintiff – especially when Ms. Packard's actions were done for the sole purpose of accommodating Plaintiff's medical status.  Ms. Packard's conduct was not discriminatory, harassing, or retaliatory; nor did her communications include any language which could be construed as inflicting severe emotional distress upon an individual.

"The burden of proving fraudulent joinder is a heavy one: the removing party must prove that there is 'no possibility' that plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *See Good v. Prudential Ins. Co. of America*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).  In this matter, Defendant has met this burden through factual support, demonstrating there is no

possibility Plaintiff can establish any claims against Ms. Packard. The exhibits attached hereto exemplify the falsity of Plaintiff's emotional distress claim directed at Ms. Packard, such that the only reasonable conclusion is that Ms. Packard was only included for the purposes of defeating diversity jurisdiction. "Courts must ignore a party who has been fraudulently joined for the sole purpose of defeating diversity jurisdiction." *Weeping Hollow Ave. Trust v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016).

Given Plaintiff's failure to allege any specific action by Ms. Packard which could possibly be construed as giving rise to any claim against her, and in light of clear California law that personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, there is no possibility of a claim against Ms. Packard, the only in-forum defendant. Based on the foregoing, Defendant asserts that Ms. Packard is a "sham" defendant and that her state of citizenship should be disregarded for diversity purposes.

### III.     PROCEDURAL REQUIREMENTS FOR REMOVAL

Plaintiff served Defendant via personal service on October 23, 2024. (Hahn Decl., ¶3.) Accordingly, this Notice of Removal is timely filed within 30 days after the date of the first receipt by Defendant of a summons and copy of the operative pleading setting forth the claims for relief upon which this action is based. See 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (thirty-day time period under removal statute begins to run from the date of formal service).

Because Relish Labs is the only existing named Defendant in this action and Ms. Packard is a sham defendant, no other party's consent to this removal is required.

The Superior Court of California, County of San Bernardino, is located within the territorial jurisdiction of the United States District Court for the Central District of California. *See* 28 U.S.C. § 84. Venue is proper in this Court because it is the

"district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon Plaintiff and a copy is being filed with the Clerk of the Superior Court of California, County of Riverside.

If any question arises as to the propriety of the removal of this action, Relish Labs requests the opportunity to brief any disputed issues and to present oral argument in support of its position that this case is properly removable.

Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Relish Labs' right to assert any defense or affirmative matter including, without limitation, the defenses of (1) lack of jurisdiction over a person; (2) improper venue; (3) insufficiency of process; (4) insufficiency of service of process; (5) failure to state a claim; or (6) any other procedural or substantive defense available under state or federal law.

## IV.     CONCLUSION

WHEREFORE, Defendant Relish Labs respectfully removes this action from the Superior Court of California, County of Riverside, to this Court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

### DEMAND FOR JURY TRIAL

Defendant Relish Labs demands a jury trial of pursuant to Federal Rule of Civil Procedure Rule 38.

DATED:  November 22, 2024        O'HAGAN MEYER LLP

By:     /s/ Jessica F. Hahn
Jessica F. Hahn
Attorneys for Defendants
RELISH LABS LLC dba HOME CHEF and
CECILIA PACKARD